UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KARENA PARKER on behalf of )
LEROY PARKER,[1] )
 )
      Plaintiff )
 )
v. ) No. 2:13-cv-19-DBH
 )
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security,[2] )
 )
      Defendant )

REPORT AND RECOMMENDED DECISION[3]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the claimant capable of performing work existing in significant numbers in the national economy. The plaintiff seeks reversal and remand on the bases that the administrative law judge, in issuing a new decision following a prior remand by this court, failed to (i) determine the limitations stemming from two severe physical impairments, status-post carpal tunnel syndrome and headaches, (ii) include, in his residual functional capacity ("RFC") finding and/or in a

---

[1] Karena Parker is the widow of Leroy Parker, who was the claimant during the first round of agency proceedings in this matter. Leroy Parker committed suicide on January 18, 2010, and Karena Parker was substituted as plaintiff. *See* Record at 725-26. For ease of reference, I will refer throughout this decision to Karena Parker as the "plaintiff" and Leroy Parker as the "claimant."
[2] Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is substituted as the defendant in this matter.
[3] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), as amended January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on December 12, 2013, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

hypothetical question posed to a vocational expert on whose testimony he relied, certain mental and physical restrictions, (iii) consider a closed period of disability, or (iv) assess substance abuse in accordance with the revised rubric set forth in Social Security Ruling 13-2p ("SSR 13-2p"). *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 7-18. I find no reversible error and, accordingly, recommend that the court affirm the decision.

This case returns to this court following a November 9, 2010, reversal of an administrative law judge's adverse October 9, 2009, decision, and remand for further proceedings before an administrative law judge. *See* Record at 716-17. The court ordered:

> [O]n remand, the administrative law judge ("ALJ") will be directed to further consider the nature and severity of the now-deceased claimant Leroy Parker's mental impairments with the assistance of a psychiatric or psychological medical expert. The ALJ will consider any updated medical evidence which may be provided on remand as well as claimant's death certificate . . ., and shall additionally ma[k]e that evidence available to the above-referenced medical expert for review. The ALJ will then issue a *de novo* decision based on the entire record.

*Id*. Following remand, the administrative law judge convened a hearing on October 4, 2011, during which he heard the testimony of the plaintiff and a mental health expert, Charles O. Tingley, Ph.D. *See id*. at 893-94. Medical expert Peter Webber, M.D., was present at the hearing but was not called to testify. *See id*. at 690, 893-94.[4]

On December 27, 2011, the administrative law judge issued the decision at issue, finding in relevant part, pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), that the claimant met the insured status requirements of the Social Security Act through the date of his death on January 18, 2010, Finding 1, Record at 693; that he had severe impairments of drug addiction, alcoholism, polysubstance abuse disorder, affective disorder,

---

[4] The hearing transcript mistakenly refers to Dr. Webber as a "vocational expert." *See* Record at 690, 893.

anxiety disorder, degenerative disc disease of the lumbar spine, status-post operative repair of medial meniscus tear of the right knee in 2008, status-post operative repair of medial and lateral meniscal tears of the left knee in 2009, headaches, and status-post carpal tunnel syndrome, Finding 3, *id*.; that his impairments, including substance use disorder, met sections 12.04, 12.06, and 12.09 of Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Finding 4, *id.* at 694; that, if he had stopped substance use, the remaining limitations would have caused more than a minimal impact on his ability to perform basic work activities and, therefore, he would have continued to have a severe impairment or combination of impairments, but those impairments would not have met or medically equaled any of the Listings, Findings 5-6, *id.* at 696; that, if he had stopped substance use, he would have had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that he would have been capable of standing and walking three hours in an eight-hour workday with normal breaks and occasionally using right foot controls, would have had occasional limitations on climbing, balancing, stooping, kneeling, crouching, and crawling, would have had to avoid hazards, uneven surfaces, and rough ground, and would have been capable of understanding, remembering, and carrying out simple instructions, using judgment in making simple work-related decisions, responding appropriately to co-workers, supervisors, and usual work situations, and adapting to changes in the work setting, Finding 7, *id.* at 697; that, if he had stopped substance use, considering his age (42 years old, defined as a younger individual, on December 1, 2007, his amended alleged disability onset date), education (at least high school), work experience (transferability of skills immaterial), and RFC, there would have been jobs existing in significant numbers in the national economy that he could have performed, Findings 9-12, *id.* at 709; and that substance use disorder was a contributing factor material to the determination of disability because he would not have been

disabled if he stopped substance use, and, therefore, he had not been disabled at any time from his amended alleged onset date, December 1, 2007, through the date of the decision, December 27, 2011, Finding 13, *id.* at 710-11. The Appeals Council declined to assume jurisdiction of the case after remand, *id.* at 677-79, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.984(a)-(b), 416.1484(a)-(b); *Dupuis v. Secretary of Health & Human Servs.,* 869 F.2d 622, 623 (1st Cir.1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the claimant's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Omission of Restrictions from Headaches, Carpal Tunnel Syndrome

The plaintiff first contends that the administrative law judge erred in failing to include in his RFC determination any restrictions stemming from the claimant's headaches or carpal tunnel

4

syndrome despite finding those conditions severe. *See* Statement of Errors at 7-9. She asserts that the administrative law judge's decision is internally inconsistent in that, despite the severity finding, he adopted an RFC generally mirroring that of agency nonexamining consultant Robert Hayes, D.O., who made absolutely no allowance for hand problems or headaches. *See id*. at 8-9. She notes that, in his 2009 decision, in describing the claimant's carpal tunnel syndrome, the administrative law judge cited to several exhibits that were added to the record after the issuance of the Hayes opinion and the physical RFC opinions of two other agency nonexamining consultants, Lawrence P. Johnson, M.D., and Donald Trumbull, M.D., and, hence, were unseen by any of those consultants. *See id*. at 7-8.

She asserts that this situation is analogous to that in *Huston v. Colvin*, No. 2:12-cv-00282-JAW, 2013 WL 3816615 (D. Me. July 19, 2013), in which this court reversed and remanded an administrative law judge's decision on the basis that he had deemed a claimant's fibromyalgia condition severe but failed to account for any limitations flowing therefrom when he relied on RFC assessments by agency consultants that predated the fibromyalgia diagnosis. *See id*. at 9; *Huston*, 2013 WL 3816615, at *2-*4.

The commissioner rejoins that, by virtue of the so-called "mandate rule" and/or waiver, the plaintiff is precluded from raising this issue on this appeal. *See* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 16) at 2-5. She argues, in the alternative, that the administrative law judge's physical RFC determination is supported by substantial evidence, and remand is unwarranted given that the plaintiff identifies no evidence of greater limitations than those found by the administrative law judge. *See id*. at 5-8. I conclude that, even assuming *arguendo* that the mandate rule permitted the reconsideration

5

of the 2009 physical RFC findings and that the plaintiff did not waive her arguments concerning them, there is no reversible error on the merits.

The administrative law judge noted in his 2011 decision that the Decision Review Board had not invited him to revisit the issue of physical limitations, that his "findings ha[d] not changed in regard to those listings[,]" and that "[t]he evidence is summarized only for completeness." Record at 698. There is no material difference between his 2009 and his 2011 findings regarding the claimant's headaches and carpal tunnel syndrome. In both decisions, he deemed those conditions severe. *Compare* Finding 3, *id*. at 12 *with* Finding 3, *id*. at 693. In both, he gave considerable weight to the RFC opinions of Dr. Hayes and/or Drs. Trumbull and Johnson, *compare id*. at 18 *with id*. at 708, none of whom, the plaintiff acknowledges, deemed either condition a severe impairment, *see* Statement of Errors at 7-8. His 2011 assessment of the claimant's physical RFC is identical in material respects to his 2009 assessment. *Compare* Finding 5, *id*. at 13 *with* Finding 7, *id*. at 697.

This case is distinguishable from *Huston* in that the impairments at issue had been diagnosed as of the time of the agency reviewers' assessments. As the commissioner notes, *see* Opposition at 7, Drs. Hayes and Trumbull both noted the claimant's carpal tunnel syndrome but deemed it nonsevere, *see* Record at 422, 539. The commissioner's regulations require consideration of "the limiting effects of all [a claimant's] impairment(s), even those that are not severe, in determining [his or her] residual functional capacity." 20 C.F.R. §§ 404.1545(e), 416.945(e). The commissioner plausibly argues that Drs. Hayes and Trumbull, as "highly qualified physicians . . . who are also experts in Social Security disability evaluation[,]" *id*. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i), can be deemed to have taken into account the limiting effects of the claimant's carpal tunnel syndrome by finding that he could not use his upper

6

extremities to lift and/or carry more than 10 pounds frequently and 20 pounds occasionally, *see* Opposition at 7; Record at 416, 533. The only other physical conditions that either doctor noted, besides carpal tunnel syndrome, were back pain and right lower extremity pain. *See* Record at 422, 539.

As the commissioner acknowledges, *see* Opposition at 7, neither Dr. Hayes nor Dr. Trumbull mentioned the claimant's headaches, *see* Record at 422, 539. Yet, unlike in *Huston*, in which "the administrative law judge did not explain how he accounted in his RFC for the plaintiff's fibromyalgia symptoms[,]" *Huston*, 2013 WL 3816615, at *3, the administrative law judge explained his handling of both the carpal tunnel syndrome and headache impairments, stating:

> The undersigned has included headaches and status post carpal tunnel syndrome in the list of severe impairments in that, when considered in combination with [the claimant's] other impairments, they reasonably could pass the *de minimis* test. However, the record shows very little to indicate significant functional limitation from either impairment, when considered singly, after the amended alleged onset date.
>
> ***
>
> The above assessed RFC, restricting exertion, postural maneuvers, and exposure to certain hazards, would provide for any restrictions related to either headaches or post carpal tunnel surgery. As the undersigned has already noted, evidence regarding functional restriction from these two impairments during the period at issue is hardly more than minimal unless considered as part of the constellation of impairments.

*Id.* at 694, 700.

The administrative law judge thus explained, consistent with the medical evidence of record, that neither the claimant's carpal tunnel syndrome nor headaches, standing alone, passed the *de minimis* test. Perhaps he erred in deeming either condition severe; however, on this record, any error in failing to include specific limitations stemming from one or both conditions

7

is harmless. The plaintiff points to no other evidence, apart from the claimant's subjective complaints, indicating the nature or severity of the restrictions imposed by his headaches and carpal tunnel syndrome. *See* Statement of Errors at 7-9.[5] In the circumstances, there is no reversible error in the administrative law judge's handling of those impairments. *See, e.g., Jones v. Astrue*, No. 1:10-cv-179-JAW, 2011 WL 1253891, at *6-*7 (D. Me. Mar. 30, 2011) (rec. dec., *aff'd* Apr. 19, 2011) (administrative law judge did not err in omitting upper extremity restrictions purportedly attributable to claimant's severe impairment of carpal tunnel syndrome when no such restrictions were found by agency consultants, and the claimant cited no authority for the proposition that it was the duty of the administrative law judge, as opposed to that of her own counsel, to develop the record on the question of whether, if such restrictions had been found, they would have precluded the jobs on which he relied).

### B. Omission of Limitations from Hypothetical Question Posed to VE

In his 2011 decision, the administrative law judge relied on testimony of a vocational expert given at the claimant's 2009 hearing to find that the claimant had been capable of performing work existing in significant numbers in the national economy. *See* Record at 710. The vocational expert testified that a person with the hypothetical limitations set forth by the administrative law judge could perform the representative jobs of parking lot attendant, Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991) ("DOT") § 915.473-010, and cutter and paster of press clippings, DOT § 249.587-014. *See id.*[6]

---

[5] The plaintiff does note in passing that, in discussing the claimant's carpal tunnel syndrome in his 2009 decision, the administrative law judge cited certain exhibits that were added to the record after agency reviewers issued their RFC opinions and, hence, were unseen by those reviewers. *See* Statement of Errors at 8. However, she fails to explain how anything in those records indicates that the condition imposed greater restrictions than assessed by the administrative law judge. *See id.*

[6] The administrative law judge erroneously described the cutter/paster job as the job of cutter, DOT § 299.587-014/paster, DOT § 249.587-018. *See* Record at 710. The vocational expert testified that the cutter/paster job corresponded to DOT § 249.587-014, and the job of document preparer corresponded to DOT § 249.587-018. *See id.* at 56.

8

As the First Circuit has observed, the responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record. *See, e.g., Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982). "To guarantee that correspondence, the Administrative Law Judge must both clarify the outputs (deciding what testimony will be credited and resolving ambiguities), and accurately transmit the clarified output to the expert in the form of assumptions." *Id*.

The plaintiff argues that the administrative law judge's RFC determination was flawed, undermining his reliance on the vocational expert's testimony, in that he:

1. Found in 2009 that the claimant was able to interact with the public occasionally and in 2011 that he had no limitations whatsoever on such interaction, although the evidence indicated that he could not interact with the public at all, *see* Statement of Errors at 11-12;

2. Assessed the claimant in 2011 with moderate limitations in concentration, persistence, or pace (which took the form of limitations to understanding, remembering, and carrying out simple instructions, using judgment in making simple work-related decisions, and adapting to changes in the work setting) but found no such limitations in 2009 and conveyed none to the vocational expert, *see id*. at 12-13; and

3. Failed in 2011 to make any finding regarding the claimant's ability to sit, *see id*. at 13-14.

With respect to the first point, the commissioner concedes that the administrative law judge erred in purporting to give the mental RFC opinion of state agency consultant John J. Warren, Ed.D., great weight but omitting, without explanation, Dr. Warren's finding that the claimant was "[u]nable to deal directly with the public[.]" Opposition at 13 (quoting Record at 556). She concedes that this error precludes reliance on the job of parking lot attendant. *See id*.

9

at 13-14 n.5. However, she argues that the error is harmless in that the cutter/paster job is consistent with that limitation. *See id*. at 13-14. I agree.

At the 2009 hearing, the claimant's attorney asked the vocational expert whether a limitation against dealing directly with the public would affect the ability to perform the parking lot attendant job, and the vocational expert testified that it would. *See* Record at 56-57. However, the claimant's attorney did not make that inquiry with respect to the cutter/paster job. *See id*. As the commissioner points out, *see* Opposition at 14, the DOT description of the cutter/paster job does not indicate that it entails any interaction with the public. According to the DOT, a cutter and paster of press clippings "[t]ears or cuts out marked articles or advertisements from newspapers and magazines, using knife or scissors" and "[r]ecords name of publication, page and location, date, and name of customer on label, and affixes label to clipping." DOT § 249.587-014. The "People" function of "Taking Instructions – Helping" is described as not significant, and the functions of talking and hearing as "Not Present – Activity or condition does not exist[.]" *Id*. Remand, accordingly, is not warranted on this basis. *See, e.g., Winders v. Astrue*, No. 1:11-cv-325-JAW, 2012 WL 3137140, at *2 (D. Me. July 10, 2012) (rec. dec., *aff'd* Aug. 1, 2012) (omission of work-related functional restriction from RFC was harmless when DOT indicated that the function at issue was not present).[7]

---

[7] At oral argument, the plaintiff's counsel cited *Henick v. Astrue*, No. 2:11-cv-147-NT, 2012 WL 283475 (D. Me. Jan. 30, 2012) (rec. dec., *aff'd* Mar. 28, 2012), for the proposition that the administrative law judge's failure to translate the claimant's moderate restriction in social functioning into a specific RFC limitation was not harmless. In *Henick*, this court rejected the commissioner's argument that a similar failure was harmless because the administrative law judge relied on the testimony of a vocational expert that the claimant could perform jobs with respect to which the DOT indicated that dealing with people was an insignificant function. *See Henick*, 2012 WL 283475, at *2-*3. The court noted that "even unskilled work typically entails some level of interaction with co-workers and supervisors[,]" and that, absent a translation of the moderate restriction into an RFC, the claimant might or might not have been restricted in her capacity to interact with co-workers and supervisors. *Id*. at *3. *Henick* is distinguishable in that, in this case, the plaintiff specifically contended in her statement of errors that the administrative law judge omitted a restriction against any work with the public. *See* Statement of Errors at 5-6, 11-12. The plaintiff's counsel did not challenge the commissioner's argument that the job of cutter/paster entails no interaction with the public.

With respect to the second point, the commissioner acknowledges that the administrative law judge's hypothetical question to the vocational expert at the 2009 hearing did not include the limitation to simple instructions and simple work-related decisions found in 2011. *See* Opposition at 15. However, she correctly argues that the error is harmless because the cutter/paster job, which is classified as having a General Educational Development ("GED") reasoning level of 2, is consistent with limitations to simple tasks or instructions. *See id*. at 15-16; *see also, e.g., Welch v. Astrue*, No. 1:11-cv-384-GZS, 2012 WL 3113148, at *1 (D. Me. July 11, 2012) (rec. dec., *aff'd* July 31, 2012).[8]

With respect to the third point, I agree with the commissioner that the administrative law judge's omission of findings regarding the claimant's ability to sit was a scrivener's error and, hence, harmless. *See* Opposition at 8-10. In 2009, the administrative law judge deemed the claimant capable of sitting for about six hours in an eight-hour workday. *See* Finding 5, Record at 13. In 2011, he indicated that his findings regarding the claimant's physical RFC had not changed. *See id.* at 698. In addition, as the commissioner notes, *see* Opposition at 8-9, "[i]f someone can do light work, [the commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit

---

[8] At oral argument, the plaintiff's counsel further contended that limitations to simple tasks or instructions do not necessarily reflect a moderate limitation in concentration, persistence, or pace, a proposition for which he cited, *inter alia*, *Arsenault v. Astrue*, Civil No. 08-269-P-H, 2009 WL 982225 (D. Me. Apr. 12, 2009), *supplemented*, 2009 WL 1609033 (D. Me. June 8, 2009) (rec. dec., *aff'd* July 28, 2009). This point was not made in the plaintiff's statement of errors and, hence, is waived. *See, e.g., Farrin v. Barnhart,* No. 05–144–PH, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted). In any event, even were the point not waived, it would not merit reversal and remand. The RFC findings at issue were endorsed by Dr. Tingley, the same expert who assessed the moderate restriction in concentration, persistence, or pace. *See* Record at 919-20; *Arsenault*, 2009 WL 1609033, at *3; *Swift v. Astrue*, Civil No. 08-280-B-W, 2009 WL 902067, at *3 (D. Me. Mar. 31, 2009) (rec. dec., *aff'd* Apr. 21, 2009).

for long periods of time[,]" 20 C.F.R. §§ 404.1567(b), 416.967(b). The administrative law judge did not find additional limiting factors of that nature. *See* Finding 7, Record at 697.

The plaintiff argues that this was not a scrivener's error or oversight because, in 2011, the administrative law judge stated that he had given great weight to, and "generally . . . adopted[,]" the Hayes RFC opinion while commenting that the earlier Trumbull RFC assessment varied "only insignificantly" from that of Dr. Hayes. Statement of Errors at 13 n.5 (quoting Record at 708). The plaintiff contends that the administrative law judge thereby implied that he found sitting limitations beyond those assessed in 2009 because, in 2011, he adopted essentially all of Dr. Hayes' limitations except that pertaining to sitting, and the only significant discrepancy between the Hayes and Trumbull opinions was Dr. Trumbull's finding of a need to alternate sitting and standing. *See id*.; *compare* Record at 416 *with id*. at 533. However, as the commissioner observes, Dr. Trumbull found a need to alternate sitting and standing in the context of explaining that the claimant's standing and walking capacities were limited. *See* Opposition at 9; Record at 416. He checked a box indicating that the claimant could sit for about six hours in an eight-hour workday, as had Dr. Hayes. *See* Opposition at 9; *compare* Record at 416 *with id*. at 533.

Thus, the administrative law judge's error in failing to expressly state a finding regarding the claimant's sitting capacity was harmless.

To summarize, even taking into consideration the administrative law judge's failure to transmit certain restrictions to the vocational expert present at the 2009 hearing, the job of cutter/paster happens to be consistent with those restrictions. As the commissioner notes, *see* Opposition at 16, this court has held that, even if an administrative law judge's errors preclude the performance of certain jobs identified by a vocational expert, the identification of one job

12

existing in significant numbers is sufficient to satisfy the commissioner's Step 5 burden, *see, e.g., Doucette v. Barnhart*, No. 04-89-P-S, 2004 WL 2862174, at *6 (D. Me. Dec. 13, 2004) (rec. dec., *aff'd* Jan. 4, 2005) (rejecting claimant's argument that a single DOT job classification is insufficient to provide a significant number of jobs).

## C. Failure To Consider a Closed Period of Disability

The plaintiff next faults the administrative law judge for failing to consider a closed period of disability based on the testimony of Dr. Tingley. *See* Statement of Errors at 14-17. She points out that Dr. Tingley indicated that, (i) even disregarding the claimant's substance abuse issues, he experienced a significant period of depression following his son's suicide, (ii) he did not seem to have resolved his severe depression prior to the time of his own suicide two years later, and (iii) with good treatment, his marked depression would have resolved in six to 12 months; however, he did not received adequate treatment prior to his death. *See id.* at 14-15. She cites *Quimby v. Astrue*, No. 07-128-B-W, 2008 WL 660180 (D. Me. Mar. 5, 2008) (rec. dec., *aff'd* Mar. 26, 2008), for the proposition that an administrative law judge is required to consider the possibility of an award for a closed period even when a claimant has not requested it. *See id.* at 16.[9]

*Quimby* did not so hold. As the commissioner points out, *see* Opposition at 18, the court merely assumed *arguendo* that an administrative law judge must consider a closed period of

---

[9] At oral argument, the plaintiff's counsel contended that, in his August 19, 2009, hearing brief, the claimant did request a closed period of disability, *see* Record at 259, a request that the plaintiff renewed in her September 22, 2011, hearing brief by stating that she relied on the 2009 brief as supplemented, *see id.* at 765. As counsel for the commissioner rejoined, the claimant did not specifically request consideration of a closed period in his 2009 brief but merely stated in a footnote that an administrative law judge is required to consider the possibility of an award for a closed period even when a claimant has not requested it. *See id.* at 259 n.2.

13

disability even if not requested to do so by a claimant who is represented by counsel, but found any error in failing to do so harmless, *see Quimby*, 2008 WL 660180, at *4-*5.[10]

In this case, as well, even assuming *arguendo* that the administrative law judge was required to consider a closed period not requested by the plaintiff, who was represented by counsel, any error was harmless. The administrative law judge supportably laid blame for any lack of effective treatment at the feet of the claimant. He explained:

> Dr. Tingley testified that with effective treatment, and without the influence[] of substance abuse, the claimant could have substantially recovered from any grief reaction from his son's suicide death in March 2008 within six months, and certainly within one year. The claimant's representative has argued that the claimant did not receive effective treatment. That argument is not supported. The voluminous record shows that the claimant never missed an opportunity to seek medical treatment. His only denials of requests for treatment were the result of repeated requests for controlled substances and, ultimately, the knowledge of his physicians that he had been convicted of drug trafficking.
>
> Any perceived deficiency in the claimant's treatment can be laid on his deception of his providers about his legal and substance abuse history. The most flagrant example of this occurred in 2009, after his release from incarceration for drug trafficking. Dr. Kazalski had dismissed him from his pain practice, and Dr. Waterman had refused to prescribe any further controlled substances, including Xanax. Both of these physicians were aware of the claimant's charge and conviction for trafficking. The claimant sought the psychiatric services of Dr. Schmidt, but did not tell him of his legal history of trafficking or his history of substance abuse. He implied to Dr. Schmidt that he already was taking Xanax, but merely wished him to take over the prescription. While under Dr. Kazalski's care, there were several attempts, some successful, by the claimant to secure pain medications from providers other than Dr. Kazalski, even after he had a contract not to do so. Therefore, if a case could be made that the claimant did not receive effective treatment, substance abuse would most certainly be material to that finding.

---

[10] The commissioner also asserts that, in a decision predating *Quimby*, *Carmichael v. Astrue*, No. 06-71-B-W, 2007 WL 951561 (D. Me. Mar. 27, 2007) (rec. dec., *aff'd* Apr. 20, 2007), this court held that an administrative law judge's failure to consider a closed period of disability in the absence of a specific request for such consideration did not constitute remandable error. *See* Opposition at 18. *Carmichael* is distinguishable in that it turned on a claimant's express waiver of any claim for a closed period. *See Carmichael*, 2007 WL 951561, at *3 ("[M]y research has located no case in which a decision of the commissioner was overturned because the administrative law judge failed to consider the possibility of an award of benefits for a closed period when the claimant's representative at hearing expressly disavowed any such claim, as was the situation here. The claimant has clearly waived any such claim in this case.") (citation omitted).

Record at 707-08 (citations omitted).

The plaintiff takes issue with the administrative law judge's finding that her counsel's argument that the claimant did not receive effective treatment was "not supported." Statement of Errors at 15 n.6 (quoting Record at 707). She notes that Dr. Tingley specifically testified that the treatment was not effective and gave an opinion, which the administrative law judge adopted, that the claimant's prescribed Xanax "would not have improved his mood and would have in fact made it worse[.]" *Id.* (quoting Record at 695).

However, as the commissioner notes, *see* Opposition at 17, the plaintiff does *not* challenge the administrative law judge's conclusion that, to the extent that the claimant did not receive effective treatment, substance abuse was material to the ineffectiveness of that treatment, *see* Statement of Errors at 14-17. As the commissioner points out, *see* Opposition at 17, there is support for that observation in the record, both in the form of the evidence described by the administrative law judge of the claimant's failure to inform his providers about his drug trafficking and drug abuse history, *see* Record at 707-08, and Dr. Tingley's testimony that the lack of effective treatment was "partly [attributable to] the substance abuse problems issue[,]" including a lack of substance abuse treatment, and that "it would be reasonable to assume that [the claimant] would have resolved his grief reaction before that [the date of his suicide] had he not had a substance abuse problem at the level he did[,]" *id.* at 923-24.

In any event, as the commissioner alternatively argues, *see* Opposition at 17-18, this court has previously rejected a contention that an administrative law judge failed to consider a closed period of disability when, as here, he found that a claimant was not disabled from her alleged onset date through the date of decision, a time frame that by definition included any closed 12-

month period of disability, *see Decker v. Astrue*, Civil No. 09-641-P-S, 2010 WL 4412142, at *5 (D. Me. Oct. 31, 2010) (rec. dec., *aff'd* Nov. 18, 2010).

The administrative law judge, hence, implicitly considered any closed period of disability. Even assuming *arguendo* that he failed to consider a closed period, and that he was required to do so despite the failure of the plaintiff, who was represented by counsel, to request such consideration, any error was harmless. He supportably determined that substance abuse was material to the claimant's prolonged grief reaction and to any failure of mental health treatment.

### D. Failure To Apply SSR 13-2p

The plaintiff finally faults the administrative law judge for failing to apply a new ruling, SSR 13-2p, that she argues substantially altered the way that the materiality of substance abuse is determined. *See* Statement of Errors at 17-18. As the commissioner notes, *see* Opposition at 19, SSR 13-2p did not take effect until March 22, 2013, *see* SSR 13-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983–1991 (Supp. 2013), at 479. It therefore postdated not only the decision of which the plaintiff complains but also the Appeals Council's November 20, 2012, ruling thereon. *See* Record at 679, 711.

At oral argument, the plaintiff's counsel contended that, once the ruling became effective, it was effective as to all cases at any stage, whether at the initial decision phase at the agency or on appeal to a United States Circuit Court of Appeals, and this court properly can consider whether, to the extent the decision strays from the guidance set forth in SSR 13-2p, there was legal error in this case. Counsel for the commissioner disagreed, arguing that, while a reviewing court can remand a case for failure to follow a Social Security ruling, in this case there was no

failure to do so because the ruling was not in effect. She noted that, while a Social Security ruling is binding on agency adjudicators, it is not binding on the courts.

In rebuttal, the plaintiff's counsel cited *Velez v. Barnhart*, No. 02 Civ. 10022(PKC), 2004 WL 1737839 (S.D.N.Y. Aug. 3, 2004). However, *Velez*, which concerned the application of a 1985 ruling, tends to support the commissioner's argument rather than that of the plaintiff, standing for the propositions that (i) Social Security rulings "become effective upon publication, and the effective date is shown on the first page of each ruling[,]" and, (ii) although they "do not have the force and effect of a statute or regulation, they are binding on all components of the SSA [Social Security Administration]. . . and are to be relied upon as precedents in adjudicating other cases." *Velez*, 2004 WL 1737839, at *8 n.6.

Beyond this, my research reveals that, in *Kurowski v. Colvin*, Civil Action No. 4:12cv137, 2013 WL 5306649 (E.D. Va. Sept. 18, 2013), the United States District Court for the Eastern District of Virginia recently rejected an argument nearly identical to that made here, reasoning:

> As a preliminary matter, Plaintiff asserts that SSR 12-2p "applies" in her case, even though its effective date of July 25, 2012 came after the June 20, 2012 decision of the Appeals Council. She contends that the ruling is nonetheless applicable in her case because it became effective prior to the deadline for filing for judicial review. But she cites no authority for that proposition, and the period for filing for judicial review is generally considered to commence on the day the decision becomes final. Moreover, several district courts in this Circuit have refused to consider an SSR promulgated after the agency's final decision. Although the Defendant does not discuss or dispute the applicability of SSR 12-2p in this case, the Court finds that Plaintiff is not entitled to rely on SSR 12-2p through its retroactive application.

*Kurowski*, 2013 WL 5306649, at *2 (citations omitted).

The plaintiff fails to make a persuasive case that remand is warranted for the application of a Social Security ruling that postdated final agency action in this case.

17

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of December, 2013.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge